```
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE
```

Gary Dolan

   v.                              Civil No. 06-cv-43-JD
                                            Opinion No. 2008 DNH 085

SunGard Securities Finance, LLC


                           O R D E R

     Gary Dolan, proceeding pro se, brought claims against his former employer, SunGard Securities Finance, alleging unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and New Hampshire Revised Statutes Annotated ("RSA") ch. 3545-A, and related state law claims, including a claim under RSA 275:56.  On January 8, 2008, the court granted SunGard's motion for summary judgment in part and gave both parties an opportunity to address claims that had been inadequately presented.  In response, SunGard moves for summary judgment on Dolan's claims that were not resolved in the first order.  Dolan filed a memorandum addressing his claim brought pursuant to RSA 275:56 and an opposition to SunGard's supplemental motion.

I.   RSA 275:56

RSA 275:56 requires employers to provide "a reasonable opportunity for any employee who so requests to inspect such employee's personnel file and further, upon request, provide such employee with a copy of all or part of such file."  In his complaint, Dolan titled Count 7: "Violation of N.H. RSA 275:56, Employee Access to Personel [sic] Files."  He alleged that SunGard, "through its agents, inserted disparaging comments taken by Dennis Molloy into my personnel file after I was terminated in order to bolster their case against me in the EEOC's investigation.  At the time of my employment I was not given a chance to view those comments and note my exceptions to them."  Compl. at 14.

SunGard previously moved for summary judgment on Dolan's claim under RSA 275:56, arguing that Molloy's notes were not part of Dolan's personnel file and, therefore, did not have to be disclosed to him when he asked for his file in August of 2004.  The court concluded that contrary to SunGard's argument, the notes would have been covered by the definition of personnel file for purposes of RSA 275:56.  The court did not analyze the claim for purposes of summary judgment, however, because neither SunGard nor Dolan addressed the preliminary question of whether a private cause of action for damages exists under RSA 275:56.

Dolan was given an opportunity to address that issue in supplemental briefing.

Dolan filed a motion to reconsider the order on SunGard's motion for summary judgment and included a section addressing his claim under RSA 275:56.  He explained that, contrary to his allegations in his complaint, he did not intend to seek a separate remedy for the alleged violation of RSA 275:56.  Instead, he states, he intended his allegations in Count 7 to show that SunGard had a retaliatory motive for the actions that were taken against him.  Despite that statement, Dolan then urged the court to adopt "an equitable remedy" that would bar an employer from using information withheld from an employee's personnel file in violation of RSA 275:56 in an administrative or judicial proceeding.  Dolan also suggests that damages should be awarded to "the victim employee."

Dolan then filed two objections to SunGard's supplemental motion for summary judgment.  Dolan again explained that his "intent was to use the multiple violations of the Statute as evidence of bad faith to support prima facie cases in other claims."  Doc. 43 at 2.  Nevertheless, he again asserts that SunGard violated RSA 275:56 and that he should be compensated for the violations.

As the court previously explained, RSA 275:56 does not explicitly provide a private cause of action for damages, and no New Hampshire cases have interpreted the statute to do so. Dolan was given an opportunity to show that the statute should be interpreted to imply a private cause of action. See Cross v. Brown, 148 N.H. 485, 487 (2002). He has not shown, however, that a private cause of action exists under RSA 275:56. Therefore, his claim under RSA 275:56, Count 7, is dismissed.

II.  Supplemental Motion for Summary Judgment

In Counts 1-4, Dolan alleges discrimination claims under Title VII and RSA 354-A.[1] Summary judgment has been entered in SunGard's favor on Dolan's claims in Counts 3 and 4 that he was terminated in retaliation for complaints he made about his supervisor, Wendy St. Louis, that his applications for three new positions were denied in retaliation for his complaints, that he was subjected to "heightened scrutiny" because of his complaints, and that his complaints were not investigated. The remaining claims in Counts 1 and 2 are that Dolan was treated differently

---

[1] Because the New Hampshire Supreme Court relies on federal case law developed under Title VII in analyzing claims under chapter 354-A, Dolan's discrimination claims are considered together. Madeja v. MPB Corp., 149 N.H. 371, 378 (2003); see also Dennis v. Osram Sylvania, Inc., 2007 WL 2783369 at *6 (D.N.H. Sept. 24, 2007).

than his female co-worker, Valarie Thorgerson, and that he was subjected to a hostile work environment because of his gender. The remaining claims in Counts 3 and 4 are that he was denied promotion within his group in retaliation for his complaints against St. Louis.

SunGard moves for summary judgment on the remaining claims. Dolan objects to summary judgment. In his objection, Dolan asserts that his disparate treatment claim was intended to allege that he was treated differently than his female co-workers in the CSR group, not just differently than Valarie Thorgerson.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

Dolan did not include record citations to support most of his factual statements and did not submit his affidavit in support of his opposition to the supplemental motion for summary judgment.  See LR 7.2(b)(2).  Instead, he concluded his memorandum of law with the statement:  "The above statements [are] true and accurate and made by me under pains and penalties of perjury."  His signature is notarized.  Apparently Dolan intended, with that conclusion, to convert his entire memorandum of law into an affidavit.  A sworn memorandum is not an acceptable substitute for a properly submitted affidavit.[2]  See Fed. R. Civ. P. 56(e).  Nevertheless, the court will consider the factual statements in Dolan's memorandum to the extent they appear to be based on his personal knowledge or are otherwise properly supported by record citations.

---

[2] Dolan is aware of the appropriate form of an affidavit, having submitted his affidavit in support of his opposition to SunGard's initial motion for summary judgment.  Because SunGard moved to strike many of his statements in that affidavit and the court ruled on the motion, Dolan is also aware of the evidentiary requirements for affidavits.

Background

Dolan worked in the Client Services Group at SunGard as a Client Services Representative ("CSR") from November of 1998 until April of 2005.  CSRs handled telephone calls from SunGard's clients about its products and services.  The group was informally divided between first line CSRs who took incoming calls and second line CSRs who responded to more difficult inquiries.  The CSRs' salaries were based on their skills and abilities rather than on whether they were handling first or second line calls.

During the time in question in this case, between April of 2004 and April of 2005, the Client Services Group was supervised by Wendy St. Louis, and all of the CSRs, other than Dolan, were female.  Richard Stinchfield was Vice President of Client Services.  James Hope was Vice President of Operations.  Dennis Molloy was Human Resources Representative.  John Grimaldi was Executive Vice President and General Manager.  Julie Keefe was Chief Financial Officer.

SunGard reviewed its employees' annually with performance appraisals.  Dolan's performance appraisals noted his hard work but also several areas in which he needed to improve, such as in seeking help from second line CSRs when needed and in dealing

7

with difficult clients.  The performance appraisals also noted his negative attitude toward his work and his fellow employees, which he was directed to improve.

Dolan testified in his deposition that St. Louis was a difficult manager and that her bad moods increased during the time he worked as a CSR.  He also said that he and other CSRs did not like St. Louis's management style because of her attitude and her bad moods.  He said that he and the other CSRs had warning signals if St. Louis arrived in a bad mood.

In his memorandum, Dolan describes an event in late April of 2004 but does not cite to record support for his statements.[3]  He contends that after St. Louis returned from a week of vacation, she informed Dolan that Thorgerson had accused him of not doing his job while St. Louis was away.  Dolan states that he was humiliated to be accused in front of the other CSRs and he argued that Thorgerson's charge was not true.  He states that St. Louis screamed at him to "shut up."  Dolan contends that he met with St. Louis, Grimaldi, and Stinchfield the next day to discuss the incident.  Grimaldi told Dolan that St. Louis was the department manager and could do what she wanted to do.

---

[3] He follows one statement with a citation to a page from Thorgerson's deposition, which does not support the statement.

The next incident that Dolan describes occurred on August 2, 2004.  He contends that just before he left work that day, St. Louis reprimanded him for not finishing a work assignment.  He responded that he would finish the work on his own time.  St. Louis then called him "useless" in front of the CSR group.  The incident was discussed at a weekly department meeting on August 5, 2004, after which Dolan filed a complaint with SunGard's personnel representative, Dennis Molloy.

Dolan met with Molloy on August 5 to discuss his complaint, and he met with Grimaldi and Molloy on August 6.  A further meeting was held about Dolan's complaint on August 16, 2004, with Dolan, Grimaldi, Molloy, and St. Louis.  Molloy took notes during the August 16 meeting.  Dolan was not satisfied with the results, and on August 20, he reported his complaints to Global Compliance Services's Alertline, an independent company that provided services to SunGard for handling employee grievances.

Dolan remembers that he asked St. Louis to meet with him in late October of 2004 to discuss a promotion within the Client Services Group.  He contends that he met with St. Louis, Hope, and Molloy on November 2 to discuss his request for a promotion.  He further contends that a second meeting was held in the office of the Chief Financial Officer, Julie Keefe, which included Molloy and Grimaldi.  Grimaldi told Dolan that SunGard no longer

9

recognized a CSR second line position as a separate job within the Client Services Group.

Dolan's performance appraisal for 2004 was signed on February 9, 2005. His overall rating was 3.19 on a scale of 1 to 5. The comments addressed his strengths, such as handling a high volume of calls and his willingness to work on assigned tasks. The comments also noted his weaknesses, however, including Dolan's tendency to stray from his work when the call volume decreased, his tendency to air his grievances with fellow employees instead of management, and his difficulty in dealing with pressure situations and challenging clients.

In his response to the appraisal, Dolan said that the CSR group was understaffed, which caused calls to go unanswered, and that he had attempted to address the problem of understaffing "without resolution." He responded to the criticism that he tended to stray or wander from his work by stating that social interaction among employees was standard practice and suggested that he was being judged differently than other employees. He asserted that his average score on teamwork was insulting because of his efforts and argued that all employees complained about the workplace. He criticized the distribution of work, suggesting that management needed a better allocation of resources. He asked for a promotion to a second line position and noted that he

hoped his ideas and suggestions would receive a better reception in the future.

Dolan met with Stinchfield and St. Louis about his performance appraisal in early February.  Stinchfield summarized the points discussed at their meeting as "[a] pervading theme that you are not happy working here," a "perception that you are singled out for special or undue criticism by management," Dolan's view that his appraisal was based on St. Louis's opinion, and his view that management did not appreciate his efforts. Stinchfield then summarized the agreement reached at the meeting, which was that Dolan's "negativity has moved into the past, clearing the way for [him] to move forward with us," and that Dolan would "attempt to take a more constructive and proactive approach to raising [his] concerns" and "attempt to offer solutions."  Pl. Ex. 32.

In February, St. Louis began to schedule employees' summer vacation times and asked Dolan to request a time for vacation. Dolan requested the week of July 4th, which he had had the year before.  St. Louis told Dolan in early March that she was giving the July 4 week to Thorgerson because Dolan had that week the summer before.  At a group meeting on March 11, Dolan became angry about the vacation schedule, banged his hands on the table, and yelled at St. Louis and Thorgerson.  The other CSRs were told

11

to leave the room, and St. Louis summoned Stinchfield to assist her in dealing with Dolan.

Dolan states that in early April of 2005, he complained to St. Louis that another CSR deliberately took his work from the printer and threw it in the trash. He asked St. Louis for her help. Dolan states that St. Louis responded that if he did not get his work fast enough, he could fish it out of the garbage. Dolan found her response humiliating. He bypassed St. Louis and asked to use a different printer, which was approved.

During the same period, Dolan showed an increasingly negative attitude and behavior in dealing with his co-workers and clients. In early April, Thorgerson told St. Louis that because of Dolan's negative attitude and hostile behavior, she was uncomfortable being in the same room with him. Thorgerson also told St. Louis that Dolan had talked about owning a gun. SunGard's management discussed Dolan's conduct and decided to terminate his employment. Molloy and Stinchfield met with Dolan on April 15, 2005, and told him that his employment was terminated.

A. <u>Disparate Treatment and Hostile Work Environment</u>

The court previously denied SunGard's motion for summary judgment on Counts 1 and 2 of Dolan's complaint, in which he

alleges that he was subjected to disparate treatment and a hostile work environment. Based on the allegations in his complaint, the court interpreted Dolan's claim to mean that he was treated differently than his co-worker Valarie Thorgerson. Because of his response to SunGard's original motion for summary judgment, Dolan was deemed to have waived any claim that his employment was terminated because of his gender. SunGard moves for summary judgment on Dolan's remaining claims in Counts 1 and 2 that he was treated differently than Thorgerson and that he was subjected to a hostile work environment.

Dolan now denies any claim that he was treated differently than Thorgerson and argues instead that he was treated differently than all three of his female co-workers because of the hostile environment St. Louis created against him. As such, Dolan focuses on his hostile work environment claim and has abandoned any separate disparate treatment claim.[4]

To avoid summary judgment on a claim of discrimination based on a hostile work environment, a plaintiff must provide properly supported facts showing that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that was

---

[4]Part of the confusion is due to Dolan's inability to differentiate among his claims for disparate treatment, hostile work environment, and retaliation. Instead, he urges that all of his discrimination claims are "inextricably tied together."

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007) (internal quotation marks omitted). The discriminatory abuse must have been both subjectively and objectively offensive. O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). In addition, anti-discrimination laws prohibit hostile conduct directed at a protected characteristic but do not impose a general civility code for the workplace. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).

In deciding whether challenged conduct was sufficiently severe or pervasive to cause a hostile work environment, the court considers "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 18 (1st Cir. 2006). St. Louis's remarks were rude and offensive but not physically threatening or humiliating. The cited incidents were also infrequent, rather than pervasive, and stopped after Dolan complained in August of 2004.[5] Dolan offers no evidence that St. Louis's infrequent

---

[5] Although Dolan states in his memorandum that St. Louis's harsh remarks were "frequent and pervasive," he provided no

remarks interfered with his work performance.  Therefore, Dolan has not shown a triable issue as to whether St. Louis's remarks were sufficiently severe or pervasive to constitute a hostile environment.

More importantly, even if Dolan "toiled in a wretchedly hostile environment," which does not appear to have been the case, SunGard is not liable unless Dolan can provide probative evidence that St. Louis was hostile to him because of his gender. <u>Higgins</u>, 194 F.3d at 258.  None of St. Louis's remarks were sexual in nature and none referenced Dolan's gender or otherwise suggested sex-based discrimination.  The only evidence Dolan offers that St. Louis's hostility was based on his gender is his minority status in the CSR group and his perception that he received more abuse than the female CSRs.  Although he states that others in the group found St. Louis's conduct abusive to him, Dolan provides no evidence from his co-workers to support his perception and no evidence of any kind that his co-workers thought that St. Louis's abuse was based on Dolan's gender.

---

evidence to show how often they occurred.  Instead, he discusses one incident in May of 2004 and then states that "[o]n or about August 2nd 2004 Ms. St. Louis subjected me to another humiliating tirade in front of co-workers."  Based on Dolan's narrative, it appears that the objectionable incidents were not frequent but instead were months apart.

Therefore, Dolan has not shown a trialworthy issue as to whether St. Louis's conduct was discriminatory.

In the absence of evidence of a hostile environment aimed at a protected characteristic, SunGard is entitled to summary judgment on Counts 1 and 2.

B. <u>Retaliation</u>

Dolan's remaining claim in Counts 3 and 4 is that SunGard retaliated against him because of his complaints about St. Louis by denying him a promotion within the CSR group in November of 2004. To make a prima facie case of retaliation, Dolan must show "that he engaged in a protected activity, . . . he suffered a materially adverse action, which caused him harm, either inside or outside the workplace," . . . and "that the adverse action taken against him was causally linked to his protected activity." <u>Mariani-Colon v. Dep't of Homeland Security</u>, 511 F.3d 216, 223 (1st Cir. 2007). If the plaintiff makes a prima facie case, the burden shifts to the employer "to articulate a legitimate, non-discriminatory reason for the challenged actions." <u>Billings v. Town of Grafton</u>, 515 F.3d 39, 55 (1st Cir. 2008). If that step is met, the plaintiff must show that the stated reason is a pretext for discrimination. <u>Id.</u>

16

Dolan sought a "promotion" to be a second line CSR. Grimaldi explained to him that no such position existed, and that instead, the CSRs merely operated as either first line or second line in taking calls. On the first line, a CSR would take initial calls from clients. If necessary, the CSR would then pass the call to another CSR to handle a more difficult problem. CSR salaries did not depend on whether they served as first line or second line but instead were based on their skills and abilities. In fact, in his 2004 performance review, Dolan was criticized for not waiting to assist as a second line resource. Further, Dolan was paid more than two of the other three CSRs. Although he was paid less than Thorgerson, her abilities and skills were deemed to exceed Dolan's.

Given those circumstances, Dolan has not shown a factual issue as to whether he suffered an adverse employment action when he was not "promoted" to a second line CSR position. In fact, the record suggests that he was encouraged to act as a second line CSR and that his pay reflected his abilities and skills.[6]

---

[6] To the extent Dolan may claim that he sought a different promotion within the CSR group, he has not provided any record evidence to support such a claim. His claims based on his applications for other positions within SunGard were considered and denied in the previous order.

In addition, even if SunGard's failure to "promote" Dolan constituted an adverse action, he has not shown a factual dispute as to whether that decision was causally related to his complaints about St. Louis. By November of 2004, more than two months had passed since he complained about St. Louis's treatment of him in August. Dolan says that the meetings in which his promotion request was discussed "turned hostile" when he was chastised for discussing salaries with other employees. He suggests that because the meetings involved SunGard executives, a retaliatory motive may be inferred. No evidence supports such an inference, however. Dolan has not shown a trialworthy issue as to whether SunGard denied him a promotion in retaliation for his complaints against St. Louis.

## Conclusion

For the foregoing reasons, Count 7 in the plaintiff's complaint is dismissed. The defendant's supplemental motion for summary judgment (document no. 89) is granted as to all claims

remaining in the case.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*/s/ Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

April 23, 2008

cc: Matthew A. Caffrey, Esquire
    Gary Dolan, pro se
    William E. Hannum, III, Esquire
    Shannon M. Lynch, Esquire